OPINION OF THE COURT
Howard A. Ruditzky, J.
The question of whether names and addresses of the People’s witnesses should be turned over to the defense as part of pretrial discovery for purposes of preparing a defense is presented by this motion. After a balancing of the defendant’s right to sufficient information to make an informed plea, or to prepare adequately for trial against safeguarding the privacy of witnesses and insulating them from the possibility of intimidation or physical harm, this court concludes that the names and addresses of the People’s witnesses should not be disclosed, particularly at this pretrial stage.
The two female defendants have each been charged with three counts of assault in the third degree (a class A misdemeanor) and harassment in the second degree (a violation). The male defendants have each been charged with two counts of assault in the third degree (a class A misdemeanor) and harrassment in the second degree (a violation). Each of the defendants was arraigned on felony assault charges, which were subsequently reduced by means of a prosecutor’s information.
The charges stem from two incidents which occurred at approximately 2:00 a.m. and 2:40 a.m. on July 16, 1995 in the vicinity of 6th Avenue and 77th Street in Brooklyn, New York. Review of the various police reports shows that the four defendants, Brian Bianco, Michelle Bianco, Jeanette Knobloch and Ralph Knobloch, were visiting a nightclub. Jeanette Knobloch and Michelle Bianco allegedly became involved in a fight while on the dance floor with a group of young adults, which included the complaining witnesses. None of the defendants knew any of the people in this group. The fight was broken up by the nightclub staff, and the participants in the fight left the club. Allegedly a second fight took place on the street resulting in bodily injuries to the complaining witnesses.
The factual allegations in the prosecutor’s information set forth that inside the nightclub two of the complainants, namely Regina Fahmy and Colleen Amaro, were struck by Jeanette Knobloch and Michelle Bianco resulting in such injuries as a *129 fractured orbit bone of the left eye. The first counts of assault in the third degree and harassment against the female defendants arise from this altercation. The prosecutor’s information also alleges that during the second altercation on the street outside the nightclub, all four defendants, including Brian Bianco and Ralph Knobloch, punched and kicked the complainants Laura Fahmy and Regina Fahmy, causing substantial pain and bruising to the complainants’ heads, limbs, backs and chests.
On February 5, 1996 a Dunaway/ Wade hearing was held before this court, at which the arresting officer, Lucy Rosa, testified. It should be noted that the Dunaway! Wade hearing has not been completed and will resume upon disposition of the instant motion. The highlights of Officer Rosa’s testimony were that she received a radio run that there was a fight on 6th Avenue and 77th Street, Brooklyn, New York, involving a knife and that when she arrived at the scene, the complaining witnesses, Colleen Amaro, Laura Fahmy and Regina Fahmy, were inside an ambulance being treated for injuries. (Parenthetically, there were no weapons charges contained in the prosecutor’s information.) Officer Rosa also testified that there were approximately 15 bystanders on the street at the time she arrived. Officer Rosa testified that Laura Fahmy and several onlookers immediately identified Brian Bianco as the person who had injured her. The other defendants were identified by the complaining witnesses shortly thereafter. Officer Rosa further testified that she never asked the defendants how the fight started or who was involved, and she did not interview anyone in the nightclub where the first fight took place. There were apparently interviews of persons besides the complaining witnesses at the location of the second fight at 6th Avenue and 77th Street. It is information about these witnesses that defendants apparently seek.
By motion dated February 23, 1996 the defendants moved for an order compelling the People to immediately turn over to the defense the names and addresses of all witnesses known to be present during the incidents in and outside of the nightclub. The defendants argue that they are entitled to the pretrial discovery of the names and addresses of eyewitnesses in order to prepare for their defense and secure witnesses on their behalf. Defendant’s memorandum of law makes the following points: (1) that the possibility of witness intimidation is small; (2) that any concern for witness safety can be adequately addressed with an order prohibiting defense counsel from shar *130 ing witness identification with their clients and (3) that disclosure of People’s witnesses is necessary in order for defense to locate additional eyewitnesses. The court will address each of these points. The People have filed a memorandum of law in opposition.
The history of the case law in this area was chronicled in the case of People v Arrellano (150 Misc 2d 574, 575 [Crim Ct, Kings County 1991]). In Arrellano (supra) it was held that it is within a Trial Judge’s discretion to order pretrial disclosure of the names and addresses of witnesses and that such disclosure should be granted absent a "founded belief’ in the "possibility of witness intimidation.” (Supra, at 576.) The Arrellano court citing People v Andre W. (44 NY2d 179 [1978]) points out that the Court of Appeals has not definitively stated its position on such disclosure. (Supra.) The First Department has stated that there should be such disclosure " 'absent compelling circumstances such as the danger of [witness] intimidation.’ ” (People v Arrellano, 150 Misc 2d, at 575, quoting People v Rivera, 119 AD2d 517 [1st Dept 1986].) "The Third Department agrees that disclosure is in the Trial Judge’s discretion, but it puts the onus on the defendant to demonstrate a material need for disclosure.” (People v Arrellano, supra, citing People v Miller, 106 AD2d 787 [3d Dept 1984].) "While the Second Department has not ruled on this issue, it has refused to prohibit Trial Judges from granting such disclosure.” (People v Arrellano, supra, citing Matter of Vergari v Kendall, 76 Misc 2d 84 [Sup Ct, Westchester County], affd 46 AD2d 679 [2d Dept 1974].)
Pretrial discovery is governed by CPL article 240. Pursuant to CPL 240.20 (1) (a)-(k), a defendant, upon demand, is entitled to discover, as a matter of right, specifically described property. The names and addresses of prosecution witnesses are not included within the enumerated matters to be disclosed upon demand (see, CPL 240.20 [1] [a]-[k]).
The Advisory Committee on Criminal Law and Procedure, one of the standing advisory committees established by the Chief Administrator of the Courts, pursuant to section 212 (1) (g) of the Judiciary Law, annually recommends to the Chief Administrator legislative proposals in the area of criminal law and procedure that may be incorporated in the Chief Administrator’s legislative program. In its most recent report entitled "1996 Report of the Advisory Committee on Criminal Law and Procedure” the Committee recommended measures to expedite and liberalize discovery. For example, there is a proposed new section, CPL 240.21, which would require the prosecutor to dis *131 close within two days of arraignment, or at the first court appearance thereafter, all Rosario material. The Committee’s recommendation on the enactment of this proposed provision was careful to note early disclosure of witness information could endanger the security of a witness and, therefore, specifically provides that a prosecutor should be authorized to redact any information which would serve to identify a person supplying information relating to the case. The measure expressly provides that the court may order disclosure of redacted information that serves to identify a witness only "if otherwise authorized by statutory or decisional law.” (1996 Report of the Advisory Committee on Criminal Law and Procedure, at 3.) The proposed statute provides in pertinent part: "Any property, material, report or statement required to be disclosed under this section may be redacted by the prosecutor to eliminate the name, address, or any other information that serves to identify with particularity a person supplying information relating to the criminal action or proceeding against the defendant. There may be no redaction of: the name of a witness whose name has already been disclosed to the defendant by the prosecution; the address of a witness whose address has already been disclosed to the defendant by the prosecution; and the name and business address of a witness who is a law enforcement official acting in an official, other than an undercover, capacity. Upon motion of the defendant, the court may, if otherwise authorized by statutory or decisional law, order disclosure of the redacted information.”
This safeguard underscores the Committee’s intent to protect the identity of witnesses despite its intention to expand and liberalize the scope of discovery.
In support of its argument, defendant cites People v Rivera (119 AD2d 517 [1st Dept 1986], supra) in which the Court held that the names and addresses of the People’s witnesses should be disclosed in instances where there were no indications that witness intimidation was likely. Rivera, however, did not involve pretrial discovery. In that case the defendant was convicted after a jury trial of murder in the second degree and moved to set aside a verdict on the grounds of newly discovered evidence. The basis of defendant’s motion was the refusal of the People with the court’s approval to make known the name of the principal witness prior to trial. The sole evidence and testimony identifying defendant as the killer came from this particular witness, and there was some evidence that she had a motive to lie because of a personal vendetta with the defen *132 dant. Even after the jury had been sworn, the trial court would not permit the disclosure of the identity of this witness until the witness had been called. After his conviction, the defendant obtained an affidavit from an individual stating that the witness had informed her of her desire to get revenge on the defendant. The trial court denied defendant’s motion without an evidentiary hearing. The First Department remanded the case for a hearing, and in a memorandum decision stated "where the evidence to be given by a witness is material to a defendant’s guilt or innocence, disclosure is encouraged.” (People v Rivera, 119 AD2d 517, 519, supra.)
In the instant case the defense seeks names and addresses of witnesses at the pretrial stage, presumably for investigatory purposes. At this point in the proceedings, any bystander to the two underlying incidents can be deemed material. However, the defendants have not provided this court with any information as to why identification of these witnesses might be material to their defense. In People v Miller (106 AD2d 787 [3d Dept 1984], supra) the Court held that the defendant has the burden to demonstrate the need for disclosure which is not met by merely asserting the need to prepare for trial.
Defendant’s memorandum of law, in support of his motion, states that the danger of witness intimidation is small because the most serious charge against defendants is assault in the third degree, a class A misdemeanor. This claim is baseless and is belied by the factual allegations in the prosecutor’s information. Defendants are accused of engaging in such behavior as fracturing a complainant’s eye orbit bone and kicking the complainants in the head and the chest. At the Dunaway! Wade hearing held before this court on February 5, 1996, the arresting officer, Lucy Rosa, testified that when she arrived upon the scene of the second incident, two of the complainants, Laura Fahmy and Regina Fahmy, were being treated for injuries inside an ambulance.
Defendants’ last point is that any concern for witness safety can be adequately addressed with an order prohibiting the four defense counsels from sharing witness identification with their clients. While this recourse may seem feasible, "slip ups can happen” (see, People v Arrellano, supra, 150 Misc 2d, at 577). In addition, the balancing of the possibility of witness intimidation against the defendants’ right to discover potentially exculpatory evidence does not come into play until the question of materiality has been decided. This two-tiered analysis was discussed in People v Sands (NYLJ, Oct. 28, 1993, at 29, *133 col 5 [Crim Ct, NY County]). In that case four defense subpoenas duces tecum seeking witness names from Bloomingdale’s department store were quashed upon a finding that there was no showing that a list of witnesses even existed. The court in Sands (supra) noted: ''distinguishable from the circumstances presented here are those in which the identity of a specific witness, who is known to exist and claimed to be material, is sought to be disclosed * * * Such circumstances require the balancing of defendant’s right to discover potentially exculpatory evidence — upon a showing of 'some basis’ therefore against the possibility that disclosure would result in harm to, or intimidation of, the witness.” (People v Sands, supra [citations omitted].)
This court, in the instant case, finds that there has been no showing that the names and addresses of any witnesses have a material bearing upon the guilt or innocence of the four defendants Brian Bianco, Michelle Bianco, Ralph Knobloch and Jeanette Knobloch. It is, therefore, superfluous to move the analysis to the next level where the possibility of witness intimidation is balanced against the defendants’ right to possible exculpatory evidence.
Defendants’ reliance upon People v Arrellano (supra) is also misplaced since the underlying offenses involving car theft and an attempted auto stripping included no allegation of violent conduct as there is herein.
Accordingly, defendants’ motion for an order compelling disclosure of witnesses names and addresses in the People’s possession is denied.